UNITED STATES, Appellant,

v.

Private (E-1) Hector R. RODRIGUEZ, 048–52–1653, United States Army, Appellee.

Misc. Dkt. ACMR 8700384.

U.S. Army Court of Military Review.

20 March 1987.

---

For Appellant: Colonel Norman G. Cooper, JAGC, Lieutenant Colonel Gary F. Roberson, JAGC, Captain Denise K. Vowell, JAGC, Captain Eva M. Novak, JAGC, Captain Karen L. Taylor, JAGC (on brief).

For Appellee: Colonel Brooks B. La Grua, JAGC, Lieutenant Colonel Paul J. Luedtke, JAGC, Major Eric T. Franzen, JAGC, Captain Scott A. Hancock, JAGC (on brief).

Before FELDER, RICHARDSON and ROBBLEE, Appellate Military Judges.

## OPINION OF THE COURT

RICHARDSON, Judge:

This case involves a government appeal which is properly before the court pursuant to Article 62, Uniform Code of Military Justice [hereinafter cited as UCMJ], 10 U.S.C. § 862 (Supp. II 1984), and Manual for Courts-Martial, United States, 1984, Rule for Courts-Martial 908(b). The government has appealed the ruling of the military judge which suppressed the results of appellee's urinalysis test.[1] These results are essential evidence with respect to the Additional Charge, which alleges the wrongful use of marijuana, in violation of Article 112a, UCMJ, 10 U.S.C. § 912a. *See United States v. Browers*, 20 M.J. 356 (C.M.A.1985).

In November 1986, the 2d Aviation Battalion, 2d Infantry Division, received a monthly urinalysis quota from the division. Since appellee's unit, C Company, had not participated in urinalysis testing for several months, it was selected for testing in November. There is no question that appellee was selected for the testing in an appropriate manner.

Appellee's battalion commander, Lieutenant Colonel (LTC) McLendon, testified at the suppresion hearing[2] that his purpose in conducting the urinalysis testing was to implement the Army's policy of controlling drug abuse.[3] LTC McLendon also testified

---

1. Appellee opposed the severance of the Additional Charge from the original charges. The government has moved for expedited review of this appeal since appellee remains in pretrial confinement. *See* Manual for Courts-Martial, United States, 1984, Rule for Courts-Martial 707(c)(1)(D). Appellee's pleading was filed with this court on 18 March 1987. Appellee's request regarding the issuance of an extraordinary writ is without merit.

2. *See* Article 39(a), UCMJ, 10 U.S.C. § 839(a).

3. LTC McLendon indicated his understanding of this policy by explaining that "flying is an inherently dangerous business, anyway; and the use of drugs by those who either fly or maintain the airplanes ... could endanger lives." *See* Drafter's Analysis to Mil.R.Evid. 313, Saltzburg, Schinasi, and Schleuter, Military Rules of Evidence Manual, 2d ed. (1986) ("For example, it may be appropriate to test—by compulsory production of urine—persons whose duties entail highly dangerous or sensitive duties. The primary purpose of such tests is to ensure that the mission will be performed safely and properly."). *See*

that, pursuant to Army regulations, aviation personnel were required to be tested annually for drugs. Of significance to this appeal is LTC McLendon's testimony that he believed some form of disciplinary action would be appropriate for aviation personnel who tested positive for the use of illegal drugs. LTC McLendon indicated that the type of disciplinary action taken would depend on the soldier.

The military judge explained his ruling which suppressed the results of appellee's urinalysis test.

> A urinalysis, however, is a unique type of inspection. The only thing that it is looking for is drug abuse. And, once such an inspection is ordered with the predetermined notion that disciplinary action will be taken, in my opinion, that makes the primary purpose the obtaining of evidence for disciplinary action or court-martial; and therefore, it is not an inspection. The battalion commander indicated that the best he would do is give lenient punishment to a very good soldier. I think, that, if it's going to be an inspection, he must be willing to take strictly administrative action.

■ Appellee contends this court is bound by the ruling of the military judge because it is a factual determination that is not clearly erroneous. The government contends this ruling "effectively creates an irrebuttable presumption that when a commander contemplates punitive measures prior to conducting a urinalysis, the primary purpose of the urinalysis is to gather evidence for disciplinary actions." Indeed, the ruling of the military judge forecloses litigation of the primary purpose of the testing once it is established that disciplinary measures are contemplated when the testing is directed. We do not believe the law requires such a result.

Mil.R.Evid. 313(b) provides, in pertinent part, as follows:

An "inspection" is an examination of the whole or part of a unit ... conducted as an incident of command the *primary purpose* of which is to determine and ensure the security, military fitness, or good order and discipline of the unit.... An order to produce body fluids, such as urine, is permissible in accordance with this rule. An examination made for the *primary purpose* of obtaining evidence for use in a trial by court-martial or in other disciplinary proceedings is not an inspection within the meaning of this rule. (emphasis added).

*See e.g. United States v. Austin,* 21 M.J. 592, 595 (A.C.M.R.1985). *Cf. Murray v. Haldeman,* 16 M.J. 74, 82 (C.M.A.1983).

Had the military judge simply ruled that the facts of this case established an improper primary purpose, we perhaps would have difficulty in finding an abuse of discretion or a factual finding that was clearly erroneous. This is because the use of positive urinalysis tests was, in fact, contemplated for disciplinary purposes, along with other purposes.[4] A finding based on the evidence to the effect that disciplinary proceedings were the primary purpose of the testing would at least appear to have some support in the record. 21 M.J. at 596-97, and cases cited therein.

■ However, the judge in this case did more than make a factual finding predicated on the evidence before him. The judge effectively ruled as a matter of law that the contemplation of disciplinary procedures by the commander ordering urinalysis testing converted the examination into a search without regard to any other proper motives entertained by the commander. This *per se* rule is contrary to existing law. Few command actions are taken for exclusively one purpose. The evil to which the evidentiary rule is directed is an examination conducted for the primary purpose of securing evidence for use in disciplinary

*also United States v. Middleton,* 10 M.J. 123, 129-31 (C.M.A.1981).

4. We do not believe the record before us establishes that disciplinary proceedings were the battalion commander's primary purpose in ordering the testing of appellee's unit. We express no view at this time as to whether such a finding would be clearly erroneous.

proceedings. Here, the most that can be said is that the battalion commander had multiple purposes when he ordered the urinalysis testing of appellee's unit.[5] This does not inexorably equate to an improper primary purpose.

The United States Court of Military Appeals has recognized that unlawful drugs pose a unique problem in the military environment. *See e.g. United States v. Trottier*, 9 M.J. 337 (C.M.A.1980); *United States v. Unrue*, 47 C.M.R. 556, 559–60 (C.M.A.1973). The rule of evidence permitting inspections makes it clear that an inspection conducted for the purpose of preventing and correcting conditions deleterious to readiness of the unit is more than an effort to find evidence for prosecutorial purposes. The clear intent of the primary purpose language in the rule is to permit the use at trial of evidence that was discovered in the course of an inspection directed towards security, military fitness, or good order and discipline. It is axiomatic that the goal of the peacetime Army is to be "fit to fight" should the need arise. A properly conducted urinalysis test of a unit is unquestionably supportive of the military mission in that it ensures the readiness of the unit to perform its mission. The fact that disciplinary proceedings are incidentally supported by a properly conducted inspection does not control. So long as the primary purpose of the examination is a proper one, a secondary purpose is not dispositive, even if that secondary purpose is the contemplation of disciplinary proceedings.[6]

In this case the military judge ruled that the contemplation of disciplinary proceedings makes the primary purpose of command directed urinalysis testing the obtaining of evidence for disciplinary action or court-martial, without regard to any other purposes motivating the commander's actions. This is not a factual finding; it is an erroneous statement of the law. As we have indicated, mixed purposes are not prohibited by Mil.R.Evid. 313(b). Mixed purposes are clearly recognized through the use of the primary purpose language. No particular purpose is automatically the primary one when several purposes are involved. The goal of the suppression hearing is to determine which purpose is, in fact, the primary purpose; not to apply a *per se* rule which is outcome determinative and excludes properly admitted evidence that should be considered in the primary purpose analysis.

Accordingly, the ruling of the military judge, which suppressed the results of appellee's urinalysis test, is reversed. The record is returned to the convening authority for action consistent with this opinion.

Senior Judge FELDER and Judge ROBBLEE concur.

---

5. As a practical matter, a commander who does not recognize the possibility of disciplinary actions arising from a positive urinalysis test is either naive or is engaging in deliberate ignorance. We are encouraged by the battalion commander's candor during the suppression hearing. A commander should not be discouraged from such candor by overly restrictive interpretations of the law.

6. LTC McLendon testified that he did not suspect anyone in appellee's unit of the use of unlawful drugs. Therefore, we are not dealing with an inspection that was a subterfuge for a search. *See e.g. United States v. Barnett*, 18 M.J. 166 (C.M.A.1984).